IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

C.A. No. 13-55296

_____

DOUGLAS GILLIES

Plaintiff-Appellant

v.

JPMORGAN CHASE BANK, N.A.

Defendant-Appellee

_____

**BRIEF OF APPELLANT**

_____

Appeal from a Dismissal Order of the United States District Court
For the Central District of California
D.C. No. 12-cv-10394-GW-MAN

(Honorable George H. Wu)

_____

DOUGLAS GILLIES
3756 Torino Drive,
Santa Barbara, CA 93105
(805) 682-7033
*pro per*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

1.  No State or Federal Court has found that "Chase was the beneficiary under the deed of trust" ................................................................. 1

2.  Judicial Notice of the Purchase and Assumption Agreement does not establish that Chase is the Beneficiary of Appellant's Note ......................... 6

3.  Appellant did not contend in state court that "Chase was the beneficiary under the deed of trust" ......................................................... 8

4.  Res Judicata does not bar the present action .......................................... 18

5.  Chase's "unsigned note" argument is hollow .......................................... 20

6.  The federal complaint is not the same subject matter and does not involve the same causes of action as the state court actions .................................... 21

7.  No foreclosure has taken place ............................................................ 23

8.  Other non-issues raised in Chase's brief ................................................ 24

    A.  The federal suit does not re-litigate the state court actions. .............. 24

    B.  The federal complaint does not allege that the Notice of Default and Notice of Trustee's Sale were invalid. .................................................... 25

    C.  Not every final judgment is "on the merits" once an appeal is final.. 25

    D.  Appellant does not challenge the state court decisions. .................... 26

    E.  Disclosure of the state court actions was never an issue. .................. 28

9.  Non-judicial foreclosure is state action under Due Process .................... 28

Conclusion ................................................................................................ 30

# TABLE OF AUTHORITIES

## CASES

*Adler v Sargent* (1895) 109 Cal. 42 .........................................................3

*Bank of Italy Nat'l Trust & Sav. Ass'n v Bentley* (1933) 217 Cal. 644 ....................2

*Bombardier Recreational Products, Inc. v. Dow Chem. Canada ULC* (2013) 216

    CA4th 591 .................................................................5

*Brown v. Board of Education* (1954) 347 U.S. 483 ..............................................29

*Constasti v. City of Solana Beach* (SDCA 2012) Case No. 09cv1371 WQH ........20

*Federation of Hillside and Canyon Assoc. v. City of Los Angeles* (2004) 126 Cal.

    App. 4th 1180 .................................................................20

*Ford v. Pacific Gas & Elec. Co.* (1997) 60 Cal.App.4th 696.................................5

*Franklin & Franklin v. 7- Eleven Owners for Fair Franchising* (2000) 85 Cal.

    App. 4th 1168 .................................................................25

*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11 ..............5

*Goldtree v. Spreckels* (1902) 135 Cal. 666............................................................19

*Goodfellow v Goodfellow* (1933) 219 Cal. 548 .................................................3

*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366 .........7

*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369 .................................7

*Keidatz v. Albany* (1952) 39 Cal.2d 826 .................................................19

*Le Mesnager v Hamilton* (1894) 101 Cal. 532, 35 P 1054 .......................................3

*Love v. Wolf* (1964) 226 Cal.App.2d 378 .................................................7

*Lupertino v Carbahal* (1973) 35 Cal.App.3d 742 .................................................3

*Monterey S.P. Partnership v W.L. Bangham, Inc.* (1989) 49 Cal.3d 454 ...............3

*More v Calkins* (1892) 95 Cal. 435 .................................................4

*People ex rel Dep't of Pub. Works v Nogarr* (1958) 164 Cal.App.2d 591 .............2

*Pitzen v. Superior Court* (2004) 120 Cal.App.4th 1374.........................................19

*Plessy v. Ferguson* (1896) 163 U.S. 537 ...............................................................29

*Replogle v. Ray* (1941) 48 Cal.App.2d 291 ............................................................5

*Shvarts v. Budget Group, Inc.* (2000) 81 Cal.App.4th 1153 .................................27

*StorMedia, Inc. v. Superior Court* (1999) 20 Cal.4th 449.......................................7

*Turner v Gosden* (1932) 121 Cal.App. 20 ..............................................................3

*United States v. Cruikshank* (1875) 92 U.S. 542....................................................30

*Watkins v Bryant* (1891) 91 Cal. 492 ......................................................................3

*Welch v Security-First Nat'l Bank* (1943) 61 Cal.App.2d 632 ................................3

*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781..................................19

*Witter v Bank of Milpitas* (1928) 204 Cal. 570.......................................................4

## STATUTES

Cal. Code Civ. Proc. §726 .......................................................................................2

Cal. Code Civ. Proc. §909 .......................................................................................4

## OTHER AUTHORITIES

Bernhardt, *Mortgages, Deeds of Trust, and Foreclosure Litigation* (CEB 2013)....2

## 1.  NO STATE OR FEDERAL COURT HAS FOUND THAT "CHASE WAS THE BENEFICIARY UNDER THE DEED OF TRUST"

Appellant's state court complaint alleged,  "defendants are not entitled to accelerate the maturity of the secured obligation and sell the residence on the grounds that they did not record a notice of default." (FAC, ER 140:19-23). The case was dismissed at the first hearing on demurrer without leave to amend. In sustaining defendants' demurrer without leave to amend, Judge deBellefeuille found, "Plaintiff claims that the notice of default and the notice of trustee sale failed to comply with California law." (ER 036:9-10). Now Chase asserts that it was determined on the merits in state court that Chase is the beneficiary under the Deed of Trust.

On page 1 of its Answering Brief, Chase makes the first of 26 unfounded assertions: *The California Court of Appeal affirmed the judgment, explicitly finding that Chase was the beneficiary under the deed of trust.*" (AB p. 1)

In fact, the California Court of Appeal wrote, "Chase is Washington Mutual Bank's *successor-in-interest* as to Gillies's trust deed." (ER 032).

Chase blurs the distinction between "beneficiary under a deed of trust" and "successor-in-interest as to" a trust deed. A successor-in-interest could be a trustee, or a trustee who also happens to be a beneficiary, or an "auxiliary" of the

beneficiary, or perhaps WaMu did not hold any interest in the trust deed when Chase stepped in.

These various roles are described by Bernhardt in Mortgages, Deeds of Trust, and Foreclosure Litigation (CEB 4th Ed. 2013) §§1.39-1.43.

For many years, the California Supreme Court declined to treat deeds of trust as mortgages. *Koch v Briggs* (1859) 14 Cal. 256. Seventy-four years later, the Supreme Court recognized its error and brought the deed of trust back within the coverage of California's mortgage policy. In *Bank of Italy Nat'l Trust & Sav. Ass'n v Bentley* (1933) 217 Cal. 644, 20 P2d 940, the court held that a deed of trust serves the same economic function as a mortgage, should be treated as a mortgage, and is generally subject to the same set of rules that govern mortgages. Cal. Code Civ. Proc. §726 was held to apply to a note secured by a deed of trust as well as to a mortgage.

Subsequent decisions have continued the melding of mortgage and deed of trust law. Today it is difficult to find meaningful legal differences between them. Although the deed of trust was originally held to give the creditor a "title" rather than a "lien," most practical consequences of that distinction have vanished. Both instruments now have the same effect on the debtor's title. Compare *People ex rel Dep't of Pub. Works v Nogarr* (1958) 164 Cal.App.2d 591, 330 P2d 858, with *Hamel v Gootkin* (1962) 202 Cal.App.2d 27, 20 CR 372.

2

See also *Aviel v Ng* (2008) 161 Cal.App.4th 809, 813, 74 CR3d 200 (mortgages and deeds of trust are functionally and legally equivalent).

There are three parties to a deed of trust:

1. Trustor. A deed of trust must identify the trustor, whose signature is necessary to the instrument's effectiveness. *Le Mesnager v Hamilton* (1894) 101 Cal. 532, 35 P 1054; *Welch v Security-First Nat'l Bank* (1943) 61 Cal.App.2d 632, 143 P2d 770.

2. Trustee. The trustee under a deed of trust is not a true trustee and is not subject to the general rules governing trusts. *Lupertino v Carbahal* (1973) 35 Cal.App.3d 742, 747. The sole significant function of such a trustee is to reconvey the property to the trustor if the loan is repaid or to foreclose nonjudicially, at the beneficiary's election, if a default occurs. *Monterey S.P. Partnership v W.L. Bangham, Inc.* (1989) 49 Cal.3d 454.

3. Beneficiary. The beneficiary must be an obligee of the secured obligation (usually the payee of a note) because otherwise the deed of trust in its favor has no purpose. *Watkins v Bryant* (1891) 91 Cal. 492, 27 P 775; *Nagle v Macy* (1858) 9 Cal. 426. The deed of trust is merely an incident of the obligation and has no existence apart from it. *Goodfellow v Goodfellow* (1933) 219 Cal. 548, 27 P2d 898; *Adler v Sargent* (1895) 109 Cal. 42, 41 P 799; *Turner v Gosden* (1932) 121 Cal.App. 20, 8 P2d 505.

3

A beneficiary is not prohibited from also serving as trustee under the deed of trust it holds [*More v Calkins* (1892) 95 Cal. 435, 30 P 583] or having one of its employees do so [*Witter v Bank of Milpitas* (1928) 204 Cal. 570, 576, 269 P 614]. This is not commonly done, however, because rights, duties, or knowledge in one capacity may be imputed to the other. It is not unusual, however, to see deeds of trust in which the party named trustee is an "auxiliary" of the beneficiary, typically a wholly or commonly owned entity-subsidiary within a holding company framework. Bernhardt, Mortgages, Deeds of Trust, and Foreclosure Litigation*, supra.*

The California trial court did not find that Chase was a beneficiary of the deed of trust. The order states, "WaMu was the beneficiary of the deed of trust ... JPMorgan was subsequently allowed to purchase certain assets of WaMu from the FDIC acting as receiver." (ER 035:25-28). The California Court of Appeal did not find that Chase was a beneficiary. In fact, the word *beneficiary* does not appear in either of the California appellate decisions. (ER 023-034). Yet the word *beneficiary* is repeated forty-two times in Chase's Answering Brief.

The Court of Appeal could not conclude that Chase was a beneficiary. An appellate court can make independent factual determinations, contrary or in addition to those made by the trial court, but only in a case where there was no right to a jury trial or where a jury trial was waived. Cal. Code Civ. Proc. §909;

4

*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 41–42, 31 CR2d 378, 398; see *Ford v. Pacific Gas & Elec. Co.* (1997) 60 Cal.App.4th 696, 706, 70 CR2d 359, 367.

Subject to the CCP §909 threshold conditions (no right to jury trial or jury trial waived, above), the power to make factual determinations on appeal lies within the appellate court's discretion. *Replogle v. Ray* (1941) 48 Cal.App.2d 291, 311. In practice, that power is rarely exercised, and only in "exceptional circumstances." Appellate court authority to make factual findings "should be exercised sparingly" and, "[a]bsent exceptional circumstances, no such findings should be made." *Bombardier Recreational Products, Inc. v. Dow Chem. Canada ULC* (2013) 216 Cal.App.4th 591, 605.

The California Court of Appeal did not characterize Chase as either a trustee or a beneficiary because there was no evidence in the record to support such a finding. The trial court's statement that Chase was "allowed to purchase certain assets of WaMu" (ER 035) did not address the issue of whether WaMu still retained any interest in the Gillies Deed of Trust at the time Chase purchased certain assets of WaMu in 2008. This issue was not alleged, argued, or adjudicated in Superior Court

## 2.  JUDICIAL NOTICE OF THE PURCHASE AND ASSUMPTION AGREEMENT DOES NOT ESTABLISH THAT CHASE IS THE BENEFICIARY OF APPELLANT'S NOTE

Chase argues that the trial court took judicial notice of the purchase and assumption agreement between the Federal Deposit Insurance Corporation (FDIC) as receiver for Washington Mutual Bank and Chase. However, Judge deBellefeuille's Order After Hearing on Chase's demurrer does not mention judicial notice. She writes at the first and only hearing, without taking evidence (ER 036):

> WaMu was the beneficiary of the deed of trust. On September 25, 2008, WaMu was closed by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver. Defendant JP Morgan Chase Bank ("JP Morgan") was subsequently allowed to purchase certain assets of WaMu from the FDIC acting as receiver. The acquisition was formalized by a purchase and assumption agreement between the FDIC and JP Morgan dated September 25, 2008.

From this, the Court of Appeal arrived at this conclusion: "There is simply no reasonable dispute that Chase is Washington Mutual Bank's successor-in-interest as to Gillies's trust deed." (ER 032). The court of appeal affirmed that Chase was Washington Mutual Bank's successor-in-interest. Yet the court of appeal did not declare that WaMu retained any interest in the subject deed of trust on September 25, 2008.  WaMu's interest in any given loan on any

given day is a question of fact that the court of appeal could not adjudicate without any discovery, documentary evidence, or testimony.

The Court of Appeal wrote, "There is simply no reasonable dispute that Chase is Washington Mutual Bank's successor-in-interest as to Gillies's trust deed." (ER 032). Chase, on the other hand, asserts "California courts have determined on the merits that Chase is the Beneficiary under Gillies's Deed of Trust".

A matter ordinarily is subject to judicial notice only if the matter is reasonably beyond dispute. "Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning." *Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374. While courts take judicial notice of public records, they do not take notice of the truth of matters stated therein. *Love v. Wolf* (1964) 226 Cal.App.2d 378, 403. "When judicial notice is taken of a document . . . the truthfulness and proper interpretation of the document are disputable." *StorMedia, Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9.

In *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, the court concluded that it was error to take judicial notice of the truth of several recitations of fact within a substitution of trustee and an assignment of deed of trust. The court noted:

The substitution of trustee recites that the Bank `is the present beneficiary under' the 2003 deed of trust. As in Poseidon, this fact is hearsay and disputed; the trial court could not take judicial notice of it. Nor does taking judicial notice of the assignment of deed of trust establish that the Bank is the beneficiary under the 2003 deed of trust. The assignment recites that JPMorgan Chase Bank, `successor in interest to WASHINGTON MUTUAL BANK, SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY' assigns all beneficial interest under the 2003 deed of trust to the Bank. The recitation that JPMorgan Chase Bank is the successor in interest to Long Beach Mortgage Company, through Washington Mutual, is hearsay . . . Judicial notice of the recorded documents did not establish that the Bank was the beneficiary or that CRC was the trustee under the 2003 deed of trust. (*Id.* at p. 1375).

Chase contends, "In his Third Complaint, and as Gillies' (sic) argues in his instant appeal, Gillies argued that Chase is not the beneficiary and cannot foreclose on the property. (ER 086-088). However, this issue was litigated in the California Court of Appeal." (AB pp. 11).

A Court of Appeal doesn't litigate.

## 3.  APPELLANT DID NOT CONTEND IN STATE COURT THAT "CHASE WAS THE BENEFICIARY UNDER THE DEED OF TRUST"

Chase's Answering Brief misstates on page 1, "*Indeed, the instant appeal is actually Gillies' third lawsuit challenging the nonjudicial foreclosure of his property and specifically, whether Chase is the beneficiary under the deed of*

*trust that secures the loan Gillies obtained from Chase's predecessor, Washington Mutual Bank.*" (AB p. 1).

This is misrepresentation number (1). The first state court action alleged that a Notice of Default was not recorded. Chase's demurrer was sustained without leave to amend. The second state court action alleged that the Notice of Default could not be properly indexed in the County records because the trustor's name was misspelled. The Superior Court dismissed the second complaint on the grounds of res judicata. At this point, Chase might have asked the Beneficiary to instruct the Trustor to sign a new Deed of Trust with his name spelled correctly. Instead, Chase fought tenaciously to defend its privilege to record foreclosure documents that spell the Grantor's name incorrectly and cannot be located by searching the county records under the Grantor's name. Whether or not the California courts were correct in approving this questionable practice is not a matter that has been raised by Plaintiff/Appellant in federal court. Why would Chase fight all the way to the California Supreme Court and then on to the U.S. District Court and the Ninth Circuit Court of Appeals to defend its right to record a document in a Grantor/Grantee Index that misspells the name of the Grantor, unless it was hiding the fact that it had no idea how to locate the Beneficiary?

Chase insists California courts have determined on the merits that Chase is the Beneficiary.

(2). "*The crux of Gillies' argument, as before, is that there is a spelling error in the recorded foreclosure property documents in which his first name is spelled as 'Dougles' instead of 'Douglas'.*" (AB p. 2). That was at the heart of the original complaint in state court, but it is not the crux of the complaint in federal court. It was alleged for the first time in U.S. District Court that Chase cannot identify or locate the lender, note holder, or the beneficiary (ER 085:13-14) based on facts that occurred after the two complaints in state court were dismissed.

(3). "*Gillies also speculated that Chase is not the beneficiary of the deed of trust and cannot locate the beneficiary, because if Chase were the lender, then Chase would have simply corrected the misspelling of Gillies's first name instead of responding to his lawsuits and subsequent appeals.*" (AB p. 2)

This concoction bears no relationship to the complaint. Indeed, Appellant has alleged in federal court that Chase cannot identify or locate the lender, note holder, or the beneficiary (Complaint, ER 085:13-14). But a trustee, a lender or a beneficiary cannot unilaterally amend a recorded deed of trust to correct a clerical error without the obtaining the cooperation of the Grantor or a court order, so Chase's proposition is ludicrous.

10

As stated in ¶¶ 23-24 of the federal complaint:

23. A spelling discrepancy is a clerical error. CRC's remedy is found in the Adjustable Rate Note (**Exhibit 6**). The Adjustable Rate Note states in Paragraph 12 that in the event of a clerical error, "I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors…" The Note Holder can request that the Trustor amend the Deed of Trust to correct a clerical error. Rather than follow the simple procedure in the contract to correct an error, CRC elected to repeatedly present a false document to the County Recorder with the intention that it be recorded and indexed under a fictitious name.

24. Chase has invested thousands of dollars pursuing a strategy of completing a defective foreclosure based on intentionally stating a fictitious name as the Trustor in a recorded Notice of Default and three recorded Notices of Trustees Sale, when it simply needed to request that the Lender contact Plaintiff and ask him to sign a correctly spelled document. One call, compared to hundreds of hours of attorneys' fees filing demurrers, motions to strike, and appellate briefs. (ER 089).

Nor is it "speculation" that Chase is not the beneficiary of the deed of trust and cannot locate the beneficiary. No bank would invest six figures to defend its inalienable right to record a defective document when it could simply ask the lender to request a correction from the borrower. Either Chase cannot find the lender, or its lawyers are generating unnecessary fees.

(4). *"The California Court of Appeal had already explicitly determined that Chase was in fact the beneficiary of the deed of trust securing repayment of the loan and was entitled to foreclose."* (AB p. 3). The California Court of

Appeal wrote, "Chase is Washington Mutual Bank's *successor-in-interest* as to Gillies's trust deed." (ER 032).

(5). *"Gillies had filed two prior lawsuits in the Superior Court for the State of California raising the same issues of whether Chase was the beneficiary under the deed of trust and whether it had the authority to foreclose."* (AB p. 4). The federal case is the first case to raise this issue.

(6). *"The premises of the* (federal) *Complaint were that the foreclosure sale of his property was invalid because (a) Chase was not the beneficiary under the deed of trust that secured the loan Gillies obtained from Washington Mutual; and (b) the foreclosure documents misspelled his first name as "Dougles" with an "e" instead of "Douglas" with an "a," purportedly causing such confusion that the state of title was uncertain.*" (AB p. 5). Part (a) is false. Appellant alleged that Chase cannot identify or locate the lender, note holder, or the beneficiary. (ER 085:13-14).

(7). *"The California Court of Appeal held that Chase was the successor in interest to Washington Mutual and could exercise the power of sale granted to the beneficiary in the deed of trust."* (AB pp. 5-6). The Court of Appeal held that "Chase is Washington Mutual Bank's successor-in-interest as to Gillies's trust deed." (ER 02). It did not hold that Chase "could exercise the power of sale granted to the beneficiary in the deed of trust." That statement is a fabrication.

12

(8). *"The Court of Appeal stated that 'there is simply no reasonable dispute that Chase is Washington Mutual Bank's successor-in-interest as to Gillies's trust deed.'* (AB p. 8). This is true.

(9). "*Gillies again alleged (in the federal complaint) that Chase was not the beneficiary under the deed of trust and therefore could not institute the nonjudicial foreclosure process.*" (AB p. 10). "*Again*" is not true.

(10). *"The California Court of Appeal explicitly stated that Chase was the successor-in-interest to Washington Mutual and therefore was the beneficiary under the deed of trust."* (AB p. 11). Half-truth. The Court of Appeal did indeed state that Chase was the successor-in-interest to Washington Mutual, but it never wrote that Chase "*was the beneficiary under the deed of trust.*" The California courts refrained from guessing at the nature of the interest, if any, that WaMu passed on to Chase. No evidence was introduced to support such a finding.

(11). *"...even though the California Court of Appeal in Gillies I had held that Chase was the beneficiary"* (AB p. 11). False.

(12). "*In the First Complaint Gillies filed in November 2009, he challenged whether Chase was the beneficiary under the Deed of Trust and whether Chase was the successor in interest to the Washington Mutual loan. (ER 32-33).*" Not true. (AB p. 11).

13

(13). "*The California Court of Appeal explicitly stated that Chase was the successor-in-interest to Washington Mutual and therefore was the beneficiary under the deed of trust.*" (AB p. 11). Half true, half not true.

(14). "*Gillies' argument on appeal that Chase is not the beneficiary of the deed of trust, even for a slightly different reason, ignores the California Court of Appeal's decision in Gillies I specifically holding that Chase is the beneficiary. (ER 32-33).*" (AB p. 12). Specifically not true.

(15 ). "*The California Court of Appeal Already Determined in Gillies I That Chase Was the Beneficiary of the Deed of Trust Securing Gillies's Loan.*" (AB p. 16).

(16). "*Therefore, the issue of whether Chase is the beneficiary is not a new issue and, indeed, was specifically addressed and definitively decided by the California Court of Appeal in Gillies I.*" (AB p. 17).

(17). "*In both the First Complaint and Third Complaint, Gillies argued that Chase was not the beneficiary and had no power to foreclose.*" The First Complaint makes no mention of "beneficiary." (AB p. 22).

(18). "*The California Court of Appeal in Gillies I made an express finding that Chase is the beneficiary of the deed of trust. (ER 32). No "new" allegation or legal theory can change this decision, which was based on the*

14

*merits of the allegations, not based on any procedural defect in pleading the allegations.*" (AB p. 22).

(19). *"...according to Gillies, 'the allegation in the federal complaint that Chase cannot identify the beneficiary was not raised in state court.' (OB 11-12). Although the particular theory may not have been previously raised in state court, Gillies in both previous lawsuits asserted that Chase was not the beneficiary of his deed of trust and the issue has been put to rest through final adjudication.*" (AB p. 23). Chase offers no citation to any pleading, order, or opinion in support of this false assertion.

(20). "*In the First Complaint, Gillies alleged more than simply that a notice of default was not recorded. Gillies challenged whether Chase was the beneficiary (ER 29, 32-33), which is the same argument he makes on this appeal.*" (AB p. 24). Chase does not cite the language of either state court complaint. Rather it cites ER 29, 32-33, the opinion of the California Court of Appeal that concluded: "Chase is Washington Mutual Bank's successor-in-interest as to Gillies's trust deed." (ER 032).

Neither a trustee nor a servicer can initiate a foreclosure without instructions from the Lender. The Adjustable Rate Note reserves this right to the Note Holder in ¶7(C).

(C) **Notice of Defaul**t

   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all interest that I owe on that amount. (ER 114; 165)

   (21). "*Similar to the allegations in his First Complaint, Gillies again alleged in his Third Complaint that Chase was not the beneficiary under the deed of trust and could not foreclose as it was never assigned any interest in the subject property.*" (AB p. 25). The reference to "allegations in the First Complaint" is not true.

   (22). *"...the District Court properly determined that the complaint was barred because the California Court of Appeal already determined that Chase was the beneficiary of the deed of trust*." (AB p. 26).

   (23). *"...the Court of Appeal held ... that Chase was the beneficiary of the deed of trust...*" (AB p. 26).

   (24). "*Moreover, it is facially apparent that both the First Complaint and the Third Complaint challenge whether Chase was authorized, as beneficiary of the deed of trust, to foreclose. (ER 30, 88)*." (AB p. 26). The referenced pages do not indicate that the First Complaint challenges whether Chase was authorized, as beneficiary of the deed of trust, to foreclose. (ER 030).

   (25). "*...the issue whether Chase is the beneficiary has been adjudicated with finality and the "new facts" pertaining to the content of an unsigned*

16

*Adjustable Rate Note were ascertainable when Gillies I and II were decided*."
(AB p. 27). Chase's reference to an unsigned note is a red herring.

(26). "*According to Gillies, because Chase 'refused' to comply with this provision by changing 'Dougles' to 'Douglas' on the foreclosure documents, he somehow has new proof that Chase is not the beneficiary*." (AB p. 16).

Appellant has never alleged or argued that Chase "refused" to change the spelling of the name. Only the Lender or Beneficiary can instruct a Borrower to correct a clerical error on a loan document. Chase cannot correct a clerical error unilaterally.

Chase's apparent inability to contact the Beneficiary was revealed by its conduct after the two state complaints were filed and immediately dismissed.

Chase offers a staccato rendition of Appellant's Opening Brief (AB p.16):

Chase . . . was unable to contact the lender/beneficiary to request that a clerical error be corrected. Only Chase . . . could have known [it was] acting without the knowledge or consent of the only entity that could authorize foreclosure." (OB 14). Because "Chase . . . [was] unable to contact the lender/beneficiary to request that a clerical error [of the foreclosure documents misspelling Gillies' name] be corrected" (OB 14), Chase has apparently demonstrated that it is not, and cannot locate, the beneficiary, thereby (in Gillies's logic) "rais[ing] a plausible new theory." (OB 14, 23). The theory was previously available, however.

The original version of that paragraph in the Opening Brief plainly states, "Plaintiff could not have discovered at the time the state court action was filed that Chase and CRC were unable to contact the lender/beneficiary to request that

17

a clerical error be corrected. Only Chase and CRC could have known they were acting without the knowledge or consent of the Beneficiary, the only entity that could authorize foreclosure. Chase's conduct raises a plausible new issue." (ER 014).

Only one complaint was filed before the demurrer was sustained without leave to amend. The second complaint was dismissed on the grounds of res judicata without consideration of the facts alleged. Plaintiff could not have ascertained before filing the first complaint that Chase probably was unable to avail itself of the simple remedy for correcting clerical errors because it could not identify the Lender. Chase's litigious strategy was a fact that occurred after the trial court found that a NOD was recorded, the demurrer was sustained, and the original state court complaint was dismissed.

## 4. RES JUDICATA DOES NOT BAR THE PRESENT ACTION

*Constasti v. City of Solana Beach* (SDCA 2012) Case No. 09cv1371 WQH is a recent District Court opinion that reviews the limits of res judicata. The elements of res judicata and collateral estoppel are the same in California and federal courts: "(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the

doctrine is being asserted was a party or in privity with a party to the prior proceeding." *Pitzen v. Superior Court* (2004) 120 Cal.App.4th 1374, 1381, quoting *Brinton v. Bankers Pension Services, Inc.* (1999) 76 Cal.App.4th 550, 556.

Under California law, there is a judgment on the merits where a demurrer to a claim is sustained and the Plaintiff fails to amend within the time allowed. *Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 785 (citing *Goldtree v. Spreckels* (1902) 135 Cal. 666, 672 ("Since the defendant by his demurrer has admitted all the facts of the plaintiff's case, we see no reason why the judgment should not be regarded as a conclusive determination of the litigation on its merits"). However, the California Supreme Court has "emphasize[d] that the res judicata effect of a judgment of dismissal, ... after the sustaining of a demurrer, is of limited scope." *Wells*, 29 Cal.3d at 789; see also *Keidatz v. Albany* (1952) 39 Cal.2d 826, 829 ("[I]t has been the settled rule in this state that a judgment entered on demurrer does not have such broad res judicata effect"). With this in mind, the court in Wells stated:

> [A judgment of dismissal after sustaining a demurrer] is a judgment on the merits to the extent that it adjudicates that the facts alleged do not constitute a cause of action. ... If, on the other hand, new or additional facts are alleged that cure the defects in the original pleading, it is settled that the former judgment is not a bar to the subsequent action whether or not plaintiff had an opportunity to amend his complaint.

For res judicata purposes, the dismissal in state court only constitutes a judgment on the merits to the extent that the facts pleaded were insufficient to allege the element of unequal treatment. See *Wells*, 29 Cal.3d at 789; see also *Keidatz*, 39 Cal.2d at 828. The Court concludes that the state court judgment of dismissal does not have res judicata effect on Plaintiffs' Complaint. See *Wells*, 29 Cal.3d at 789; see also *Goddard*, 14 Cal.2d at 52.

Chase argues, "res judicata bars the litigation not only of issues that were actually litigated but also issues that could have been litigated." *Federation of Hillside and Canyon Associations v. City of Los Angeles* (2004) 126 Cal. App. 4th 1180, 1202. That case involved extensive litigation with multiple hearings and appeals. It does not apply to a demurrer without leave to amend.

## 5.  CHASE'S "UNSIGNED NOTE" ARGUMENT IS HOLLOW

Chase refers to an "unsigned adjustable rate note" in its Answering Brief.

"Gillies urges otherwise on the rationale that the beneficiary, pursuant to a provision in an **unsigned** adjustable rate note[1] has the ability to correct clerical errors, such as the misspelling of Gillies's first name as "Dougles" instead of "Douglas" in the foreclosure documents – and should have done so.[2] (See e.g. OB 14). Inasmuch as Gillies had the opportunity to make this argument and it involves the same subject matter as the previous lawsuits, he cannot escape the application of res judicata to this new theory as well."

[1.] The adjustable rate note that Gillies signed, however, does not contain any such provision. (ER 163-169).

[2.] Gillies does not explain why he failed to raise this argument in either of his two earlier lawsuits. (AB p. 12.)

*"Even if the adjustable rate note upon which Gillies relies (ER 163-168) were to be considered, it is irrelevant: (1) it is not signed by either party..."* (AB p. 18).

The borrower is usually handed an unsigned copy of loan documents. Original signed documents are retained by the title company and forwarded to the Lender. If Chase were the Lender, it would possess, and could easily produce, the original signed promissory note.

"*Moreover, the adjustable rate note that Gillies did sign is different from the unsigned version in that it does not contain any such provision. (ER 186-189).*" (AB p. 19). Alas, the signed document Chase is referring to, ER 186-189, is a Fixed/Adjustable Rate Rider attached to the Deed of Trust (ER 169-189).

The remedy for a clerical error on the Deed of Trust is spelled out in ¶12 of the Adjustable Rate Note. (ER 167).

## 6. THE FEDERAL COMPLAINT IS NOT THE SAME SUBJECT MATTER AND DOES NOT INVOLVE THE SAME CAUSES OF ACTION AS THE STATE COURT ACTIONS

"*The District Court granted Chase's motion without leave to amend, finding that the doctrine of res judicata and the Rooker-Feldman doctrine*

21

*barred the subject federal action filed by Appellant...after he lost two previous state court cases on the same subject matter."* (AB p. 1).

Judge Wu's order states, "(I)t is beyond question that the instant matter involves the same causes of action as the state court actions." Judge Wu does not write, "the same subject matter." The District Court decision does not accurately portray the state court complaints. A cause of action in federal court alleging that Chase is not the beneficiary based upon conduct that occurred after both state complaints were dismissed is not the same as a cause of action in state court alleging that a Notice of Default was not recorded.

Appellant did not allege that his name was misspelled when he filed the first state court complaint. He did not have an opportunity to amend the complaint to raise this issue when the demurrer was sustained without leave to amend. The second lawsuit addressed the indexing issue. It was dismissed on res judicata. However, that complaint put Chase on notice that the Notice of Default with a misspelled name could not be located in the County Records. At that point, Chase could have directed the Note Holder to notify the Borrower that he must re-execute a corrected Deed of Trust pursuant to ¶12 of the Note. See ER 167.

Instead, Chase demurred.

## 7. NO FORECLOSURE HAS TAKEN PLACE

The District Court's Ruling assumes that a foreclosure has occurred.

[E]ven were Plaintiff to be correct that the case at bar raises new arguments and facts to support his claims that Defendant wrongfully foreclosed on the Property and to quiet title thereof, "a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though [the plaintiff] presents a different legal ground for relief." (ER 007, (Tentative Ruling, p. 3).

To summarize, the two state complaints and the Complaint filed here allege virtually identical facts, all centering around Defendant's alleged wrongful conduct in foreclosing on Plaintiffs home. (Tentat. Ruling, p. 4)

Chase argues, "Again, Gillies alleged a cause of action for wrongful foreclosure in his Third Complaint. (ER 88-90). Gillies simply strains credulity when he states in his Opening Brief that he never alleged a foreclosure occurred." (AB p. 27).

Chase suggests that Wrongful Foreclosure is not available to a property owner until the property is sold—even after a NOD and a NOTS have been recorded and published.

No foreclosure has occurred. Appellant has not alleged that a foreclosure occurred. Chase does not cite any credible source to support its argument.

Gillies's lawsuit in the United States District Court for the Central District of California asserted three causes of action for wrongful foreclosure, quiet title, and for (collectively) declaratory and injunctive relief. The premises of the Complaint were that *the foreclosure sale of his property was invalid* ... (AB p. 5)

Neither the federal nor the state complaints allege "that a foreclosure sale was invalid because the foreclosure documents misspelled his first name."

## 8. OTHER NON-ISSUES RAISED IN CHASE'S BRIEF

### A. The federal suit does not re-litigate the state court actions.

Chase filed a motion to dismiss the subject federal lawsuit on December 26, 2012, based on res judicata and the failure of each putative cause of action to state a claim for relief. In opposition, Gillies made numerous arguments to the effect that the California trial courts and Courts of Appeal had made numerous substantive errors in their respective decisions in his prior two lawsuits. — Chase's Answering Brief, p. 6.

This argument turns Appellant's Opposition upside down, which begins:

This case does not revisit the issues raised in state court that the name of the Trustor was not spelled correctly, and as a result the Deed of Trust, Notice of Default, and Notices of Trustee's Sale could not be found by searching the name of the Grantor in the Grantor-Grantee Index. The California courts decided to ignore the indexing problem and constructive notice as they found that there was actual notice. (ER 056).

The issue of whether Chase can identify or communicate with the Lender is not a matter that might have been urged to sustain or defeat the determination in *Gillies I* as to whether the Notice of Default was recorded. (ER 060).

**B.  The federal complaint does not allege that the Notice of Default and Notice of Trustee's Sale were invalid.**

Chase argues, "Gillies again alleged that the Notice of Default and Notice of Trustee's Sale were invalid because the foreclosure documents spelled his first name as "Dougles" instead of "Douglas." (See e.g. ER 88-90, ¶¶ 20-22, 26).

Paragraphs 20-26 of the complaint say nothing of the sort. They allege that CRC intentionally recorded the notices with a misspelled name, but not that the notices were invalid. California courts affirmed the validity of the notices.

**C.  Not every final judgment is "on the merits" once an appeal is final.**

Chase asserts, "Because Gillies exhausted his appeals following the sustaining of the demurrers, there was a final judgment on the merits." "[I]n California the rule is that the finality required to invoke the preclusive bar of res judicata is not achieved until an appeal from the trial court judgment has been exhausted or the time to appeal has expired. *Franklin & Franklin v. 7- Eleven Owners for Fair Franchising* (2000) 85 Cal. App. 4th 1168, 1174. " (AB p. 20). *Franklin* holds that res judicata does not apply until an appeal is final, but it does not go so far as to suggest that res judicata applies to every case in which an appeal becomes final. Final judgment and res judicata are not synonymous.

**D.  Appellant does not challenge the state court decisions.**

Chase argues, "Gillies disingenuously argues that ... 'the federal case does not challenge any decision of the California Court of Appeal." (OB 12-13). However, Gillies' opposition to Chase's motion to dismiss expressly challenged the decision of the state court judges. (ER 58:1-3 56:5-6; 59:15-16; 59:25-26; 59:27 – 61:20; 64:25-27; 65:13-16; 66:5-7). Thus, the District Court did not err." (AB p. 25). Chase's references do not support its claim. The cited passages extracted from Plaintiff's Opposition describe what happened, but do not challenge the state actions.

The "disingenuously argued" excerpts are:

Judge deBellefeuille did not address the issue of the misspelled name at the demurrer hearing or in her order. (ER 058:1-3).

The California courts decided to ignore the indexing problem and constructive notice as they found that there was actual notice. (ER 056:5-6).

The indexing problem was not addressed by the trial judge in either case. The Court of Appeal affirmed the trial court's decision (ER 059:15-16).

There was one good reason: the "new issue" of indexing was not raised in *Gillies 1* because the demurrer in that case was sustained without leave to amend. (ER 059:25-26).

The issue of whether Chase can identify or communicate with the Lender is not a matter that might have been urged to sustain or defeat the determination in *Gillies I* as to whether the Notice of Default was recorded. (ER 061:11-13).

The erroneous identification of the Trustor on the Notice of Default and the Notice of Trustee's Sale addressed by the state court did not adjudicate the issues raised in the case now before the (federal) court relating to the absence of a Lender. (ER 064: 25-27).

A demurrer is not a trial on the merits. The earlier conclusion of the trial court, which was to sustain a demurrer without leave to amend because the court could not foresee any way to amend the Complaint to state a cause of action, can be shown by subsequent pleadings to be erroneous. (ER 065:13-16).

If a court wrongly concludes that the plaintiff cannot amend his complaint to state a cause of action, and a new lawsuit reveals the error, then the court can revise its decision rather than dismiss the complaint. It is an abuse of discretion to sustain a demurrer without leave to amend if plaintiff shows there is reasonable possibility any defect identified by defendant can be cured by amendment. *Shvarts v. Budget Group* (2000) 81 Cal.App.4th 1153, 1157. Chase's inability to contact the Lender states a new cause of action not raised in any previous action. (ER 066:3-9).

27

These are statements of fact. They are not stated as grounds for appealing the state court decisions in federal court.

**E. Disclosure of the state court actions was never an issue.**

Chase states that Appellant omitted to disclose in his federal Complaint that he previously had filed two other lawsuits in the Superior Court for the State of California raising the same issues, and that the Superior Court in both prior cases had dismissed those actions for failure to state a claim for which relief could be granted. (AB p. 5).  Neither of the state complaints raised the same issues. The second complaint was dismissed on the grounds that the action was barred by res judicata, not for failure to state a claim. (ER 023). However, the state court actions were not concealed from the district court, nor were they overlooked.

Plaintiff alleged in ¶24 that Chase has invested thousands of dollars and hundreds of hours of attorneys' fees filing demurrers, motions to strike, and appellate brief. (ER 089).

## 9.  NON-JUDICIAL FORECLOSURE IS STATE ACTION UNDER DUE PROCESS

In October 2009, the Judicial Conference Advisory Committee on Civil Rules asked the Federal Judicial Center to undertake an analysis of changes in

the resolution of motions to dismiss filed under Rule 12(b)(6). The study was designed to monitor the effect of *Iqbal* and *Twombly,* which raised the pleading standards for stating a claim.  The report, "Motions to Dismiss for Failure to State a Claim After Iqbal" (March 2011) is posted on the official website of the Federal Judicial Center.[1]

The Center selected 23 federal district courts to be included in the study by identifying the 2 districts in each of the 11 circuits with the largest number of civil cases filed in 2009.

An astonishing ninety-one percent of claims against banks were dismissed at the pleading stage. While there was no increase in the ratio of dismissal on civil rights and employment discrimination cases, the ratio of dismissal of complaints about mortgage loans tripled during the period of the study.

Sometimes the law is slow to change. Following *Plessy v. Ferguson* (1896) 163 U.S. 537, "separate but equal" remained standard doctrine in U.S. law until it was rejected by the Supreme Court in *Brown v. Board of Education* (1954) 347 U.S. 483. It took 58 years to close that gap in American jurisprudence.

In the past five years, millions of families have been deprived of their homes in non-judicial proceedings that required no judicial oversight while

---

[1] http://www.fjc.gov/public/pdf.nsf/lookup/motioniqbal.pdf/$file/motioniqbal.pdf

complex statutory protocols enable banks to proceed with impunity. How long can we expect that tens of millions deprived of their homes will continue to abide by a judicial system that turns a blind eye to their fate?

The Fourteenth Amendment prohibits the state from depriving any person of life, liberty, or property without due process of law; but it adds nothing to the rights of one citizen as against another." *United States v. Cruikshank* (1875) 92 U.S. 542, 23 L.Ed. 588. Intricate statutory procedures enable banks to foreclose with impunity. Without those laws, they would have to appear in court. State action has inoculated the banks to execute non-judicial foreclosures.

## CONCLUSION

Chase does not argue that it is the Beneficiary. It offers no evidence to prove it. Appellant requests that dismissal of his complaint be reversed.

Date: November 12, 2013

s/ Douglas Gillies
Appellant

## CERTIFICATE OF COMPLIANCE

## CASE NO. 13-55296


Pursuant to Rule 32, F.R.A.P., I certify that this Reply Brief is proportionately spaced with Times New Roman 14 point typeface and contains no more than 7,000 words pursuant to Rule 32(a)(7)(B).

I certify that Appellant's Reply Brief contains <u>6,983</u> words.


DATED: November 12, 2013

s/ <u>Douglas Gillies</u>
DOUGLAS GILLIES
Plaintiff-Appellant

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Appellant's Answering Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 12, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Shane Saxon

SHANE SAXON